DULUTH NEWS–TRIBUNE
and Mark Stodghill

v.

Patrick MEDURE and County of Itasca.

Civ. No. 5–91–179.

United States District Court,
D. Minnesota,
Fifth Division.

Aug. 13, 1992.

Joseph J. Roby, Johnson, Killen, Thibo-
deau & Seiler, Duluth, MN, for plaintiffs.

Jon K. Iverson, Erstad & Riemer, Minneapolis, MN, for defendants.

## ORDER

ROSENBAUM, District Judge.

This matter is before the Court on the parties' cross-motions for summary judgment, pursuant to Rule 56, Federal Rules of Civil Procedure (Fed.R.Civ.P.). Oral arguments were heard March 29, 1992. For the reasons set forth below, defendants' motion is granted in part and denied in part. Plaintiffs' motion is denied.

### I. Background

Plaintiff Mark Stodghill ("the reporter") is a reporter for plaintiff Duluth News–Tribune [1] ("the newspaper"), a daily newspaper published in Duluth, Minnesota. In November, 1991, Stodghill was assigned to report on a State murder trial in Aitkin, Minnesota.[2]

During the criminal investigation, law enforcement authorities tape-recorded five interviews with the defendant. Portions of these interviews were expected to be introduced at trial. Prior to the commencement of trial, the tape recordings and transcripts of these interviews were edited to remove statements which were considered prejudicial or irrelevant. Counsel were provided two sets of transcripts, one edited, the other unedited. Only the edited version was to be introduced as evidence.

On the first day of trial, the reporter asked defense counsel [3] for transcripts of the tape recordings. Defense counsel, apparently without consulting the Court or opposing counsel, offered the unedited transcripts to the reporter on the condition that none of the excised portions be published. The reporter agreed.

During the noon recess on the second day of trial, defense counsel gave [4] the reporter the unedited transcripts. That afternoon, the edited tape recordings were played for the jurors who were provided copies of the edited transcripts. The reporter followed along using his unedited transcripts and made notes in the margins to indicate the portions played to the jury.

Later that day, the prosecutors [5] learned that the reporter had the unedited transcripts. They raised concerns about possible publication of the excised material. Patrick Medure, an Itasca County Deputy Sheriff ("the deputy"), heard the prosecutors' discussions. The deputy asked the reporter to produce the documents. The reporter gave the transcripts to the deputy—who kept them. The reporter objected and asked the deputy to return the transcripts. The deputy refused.

On the morning of the third day of trial, the trial judge met with the prosecutors, defense counsel, and the reporter in chambers.[6] The prosecutors agreed to give edited transcripts to the reporter, and to any other interested press, as soon as they were accepted into evidence. The reporter was provided with an edited transcript for the remainder of the trial.

Based upon these facts, the reporter and the newspaper filed this lawsuit on December 6, 1991. Plaintiffs claim that the deputy unlawfully seized the unedited transcripts, which constituted a violation of their constitutional rights under 42 U.S.C. § 1983, common law trespass, and replevin. Plaintiffs seek compensatory damages, punitive damages, and injunctive relief. Fi-

1. The Duluth News–Tribune is a division of Northwest Publications, Inc., a Delaware corporation.

2. The trial was held in the district court for the Ninth Judicial District of the State of Minnesota, the Honorable Clinton W. Wyant presiding.

3. The defendant was represented by Max Ruttger, III, a public defender.

4. The Court recognizes that the parties dispute whether or not defense counsel "gave" or "loaned" the unedited transcripts to the reporter. In light of its ruling below, the Court need not resolve this dispute at this stage of the proceedings.

5. The prosecutors in this case were Aitkin County Attorney John R. Leitner and Itasca County Attorney John Muhar.

6. No record was made of the chambers conference. As such, this Court relies on the representations of counsel as to what transpired at that conference.

nally, plaintiffs seek relief against Itasca County on the basis of respondeat superior for their common law claims.

In December, 1991, defendants filed this motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), Fed.R.Civ.P. Because defendants proffered deposition testimony, affidavits, and other matters outside the pleadings, they requested that the Court convert the motion to one for summary judgment, pursuant to Rule 56, Fed. R.Civ.P. Plaintiffs filed a motion for summary judgment. At oral argument, the parties agreed that little additional discovery was required. Accordingly, the Court considers these motions as cross-motions for summary judgment.

## II. *Analysis*

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Summary judgment may be granted against a party which fails to make a showing sufficient to establish the existence of an element essential to its case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The opposing party must produce concrete facts demonstrating the issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). If the opposing party fails to carry that burden by establishing significant probative evidence, summary judgment should be granted. *Hartnagel v. Norman,* 953 F.2d 394, 395–96 (8th Cir.1992).

Plaintiffs move for summary judgment, arguing that there are no genuine issues of material fact as to any of their claims. Defendants move for summary judgment, arguing that they are entitled to immunity as public officials or that plaintiffs have failed to state a § 1983 claim upon which relief can be granted.

### A. Defendants' Motion for Summary Judgment

Defendants argue, first, that the deputy and Itasca County are entitled to absolute prosecutorial immunity on the § 1983 claims.[7] In the alternative, defendants argue that the deputy is entitled to qualified immunity on the § 1983 claims. Finally, defendants argue that they are entitled to official or discretionary immunity on the state law claims.

#### 1. *Absolute Immunity*

The Court finds, below, that the deputy is entitled to qualified immunity. Therefore, the Court does not reach the question of absolute immunity.

#### 2. *Qualified Immunity*

Government officials are shielded from liability under § 1983 in the performance of discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). For qualified immunity purposes, "clearly established" law means "[t]he contours of the right [in question] must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). *See also Taylor v. Bowers,* 966 F.2d 417 (8th Cir. June 10, 1992).

A series of "burden shifts" are involved in a qualified immunity defense. Defendants who seek summary judgment on the basis of qualified immunity bear the initial burden of coming forward with facts showing that they were acting within the scope of their discretionary authority. In reply, plaintiffs must demonstrate that the law allegedly violated was clearly established. Finally, defendants who would succeed on their motion for summary judgment must demonstrate that there are no material issues of fact remaining as to whether their actions were objectively reasonable in light of the law and the information they possessed at the time of their

7. Plaintiffs' § 1983 claim is asserted against the deputy alone and not against Itasca County.

actions. *Siegert v. Gilley,* —— U.S. ——, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

 Here, the Court finds as a matter of law that a reasonable official in the deputy's position could not have anticipated that retrieving the unedited transcripts would violate any of the reporter's constitutional rights.[8] The Court will address each constitutional claim in turn.

### a. First Amendment Claim

 Plaintiffs claim they were deprived of their constitutional right to freedom of the press under color of state law within the contemplation of 42 U.S.C. § 1983.[9] The press, as "surrogates" for the public, have an interest in full disclosure of trial proceedings.[10] *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 572, 100 S.Ct. 2814, 2825, 65 L.Ed.2d 973 (1980). As such, the reporter clearly had a first amendment right to attend the trial. *Globe Newspaper Co. v. Superior Court for County of Norfolk,* 457 U.S. 596, 603, 102 S.Ct. 2613, 2618, 73 L.Ed.2d 248 (1982). This first amendment right of access to a criminal trial, however, does not confer any special benefit on the press. *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 610, 98 S.Ct. 1306, 1318, 55 L.Ed.2d 570 (1978). The Supreme Court has held that the first amendment does not "guarantee the press a constitutional right of special access to information not available to the public generally." *Branzburg v. Hayes,* 408 U.S. 665, 684, 92 S.Ct. 2646, 2658, 33 L.Ed.2d 626 (1972).

It is undisputed that the reporter was never barred from the trial. He had the opportunity, as did any other member of the public or press, to see and hear all the evidence as it was presented to the jury. The Court cannot conclude that it was clearly established that retrieving the transcript, which was neither offered at trial nor made available to the public, would violate the reporter's first amendment rights. This determination does not commend the deputy's actions, but the Court finds that the asserted right to possess this material was in no regard "clearly established."

 Plaintiffs also argue that the deputy's actions operated as an impermissible prior restraint under the first amendment. The first amendment generally prohibits prior restraints on publication of information on judicial proceedings. *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). Here, the reporter voluntarily agreed to refrain from publishing any of the excised material from the unedited transcript. There is no record of any State action in this regard. As such, the Court finds no prior restraint.[11]

 The Court finds that the deputy's actions, however inartful, did not impede the reporter's right to be present or his right to publish what took place at the trial. *Richmond Newspapers,* 448 U.S. at 576–78, 100 S.Ct. at 2827–28. A reasonable official would not have understood that retrieving the transcript, to which no one

---

**8.** Plaintiffs allege that the deputy acted under color of state law to deprive them of their first, fourth, and fifth amendment rights, in violation of 42 U.S.C. § 1983. The prohibitions of these amendments apply to state as well as federal government via the fourteenth amendment. *See Near v. Minnesota,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931); *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980).

**9.** Plaintiffs' constitutional claims were brought under 42 U.S.C. § 1983. Accordingly, the Court has analyzed the constitutional claims in the context of § 1983 caselaw regarding sufficiency of pleadings and available defenses.

**10.** It is useful to note that the right to attend criminal trials is not absolute. A trial court may impose "reasonable limitations" on access to a trial "in the interest of the fair administration of justice." *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 581 n. 18, 100 S.Ct. 2814, 2830 n. 18, 65 L.Ed.2d 973 (1980).

**11.** The parties also dispute whether the unedited transcript was a public document which could, or should, have been filed with the Aitkin County Court Administrator. There is no record evidence indicating that the document was offered or rejected either as a trial or public document. Absent such a record, the Court cannot resolve this dispute.

other than a court official was entitled, would operate as a prior restraint or violate any other clearly established first amendment law. Accordingly, the deputy is entitled to qualified immunity protection as to plaintiffs' § 1983 first amendment claims.

### b. Fourth Amendment Claim

Plaintiffs also claim that their fourth amendment right to be free from an unreasonable search and seizure was violated under color of state law within the contemplation of 42 U.S.C. § 1983. The crux of their argument is that the deputy retrieved the unedited transcripts without a warrant or other lawful authority.

The Court finds that plaintiffs have not demonstrated that the deputy's actions violated clearly established principles of fourth amendment law. Plaintiffs cite general fourth amendment law showing that the victim of an unreasonable seizure need not own the seized property, but may merely enjoy a possessory interest. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). In this Court's view, a *Rakas* analysis is overly simplistic. The material in the reporter's hands, in this unusual case, was not the reporter's material. It was material which had been given to an officer of the court who then made it available beyond his own authority. Again, the Court does not commend the propriety of the deputy's actions, but in his efforts to safeguard the fair trial of the accused, the Court cannot find that the deputy violated a clearly established constitutional right. Accordingly, the deputy is entitled to qualified immunity as to plaintiffs' fourth amendment claims.

### c. Fifth Amendment Claim

Plaintiffs, finally, assert a fifth amendment deprivation of property without due process under color of law pursuant to 42 U.S.C. § 1983. They assert that the deputy's actions deprived the reporter of his right to possess the unedited transcripts.[12]

Again, plaintiffs simply recite general tenets of fifth amendment law to support this claim. The Court recognizes that "the question of what constitutes a taking for purposes of the fifth amendment has proved to be a problem of considerable difficulty." *Penn Cent. Transportation Co. v. New York City,* 438 U.S. 104, 123, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). Yet none of the cases cited, and none available to the Court, suggests that the deputy's actions violated a clearly established right within the meaning of *Harlow.* Accordingly, the Court determines that plaintiffs' conclusory assertions are insufficient to show a genuine issue for trial as to whether the deputy is entitled to qualified immunity on their fifth amendment claim. *See Get Away Club, Inc. v. Coleman,* 969 F.2d 664 (8th Cir.1992).

Accordingly, as to each of plaintiffs' constitutional allegations underlying their § 1983 claim, the Court finds that no genuine issues of material fact remain as to whether the deputy's conduct violated "clearly established" first, fourth, or fifth amendment law. Accordingly, the Court is constrained to find that the deputy is entitled to qualified immunity on plaintiffs' claim for § 1983 damages.

### 3. *§ 1983 Declaratory and Injunctive Relief*

The Court has found that the deputy is immune from plaintiffs' claims for § 1983 damages. After a careful review of the record, however, the Court finds that genuine issues of material fact remain as to plaintiffs' entitlement to declaratory or injunctive relief on Count I.

Defendants concede that a dispute remains as to what kind of possessory interest the reporter obtained in the unedited transcripts. In addition, no party seriously contests the reporter's right to any marginal notes he made. In the absence of a developed record, the Court cannot rule on plaintiffs' § 1983 claim for injunctive and declaratory relief.

---

**12.** Plaintiffs also argue, in a somewhat abbreviated fashion, that the reporter made a "contract" with defense counsel which should be afforded fifth amendment protection. The Court finds no evidence to support this assertion and, accordingly, finds that it cannot survive summary judgment.

#### 4. *Official or Discretionary Immunity*

Under Minnesota law, public officials "charged by law with duties which call for the exercise of ... judgment or discretion" are not personally liable for damages unless they are "guilty of a willful or malicious wrong." *Elwood v. County of Rice,* 423 N.W.2d 671, 677 (Minn. 1988). The Court must examine the nature of the act giving rise to the claim for relief. *Larson v. Independent School Dist.,* 289 N.W.2d 112, 120 (Minn.1979). Whether an official's conduct merits immunity "turns on the facts of each case." *Elwood v. County of Rice,* 423 N.W.2d at 678.

Here, and for the present, the Court finds that a material issue of fact remains as to whether the deputy was exercising an official, discretionary duty when he retrieved the unedited transcripts from the reporter. While defendants assert that the deputy was "assisting the prosecution in the murder trial," this Court has no evidence that the deputy was acting under the guidance of the prosecutorial team.

Finally, defendants assert that Itasca County is eligible for discretionary immunity, pursuant to Minnesota Statutes, § 466.03, subdivision 6. This determination also turns on whether or not the deputy was performing a "discretionary function." *Nusbaum v. County of Blue Earth,* 422 N.W.2d 713 (Minn.1988). On this same incomplete record, the Court finds that summary judgment as to discretionary immunity under state law is inappropriate.

#### B. Plaintiffs' Motion for Summary Judgment

With regard to Count I, the Court denies summary judgment as to the requested declaratory and injunctive relief for the reasons set forth above.

With regard to Counts II and III, the Court finds that the claims for trespass and replevin will turn on this Court's determination of the reporter's possessory interest in the unedited transcripts. Because both parties agree that genuine issues of material fact remain as to whether defense counsel "gave" or "loaned" the transcripts to the reporter (and any possible legal effect of either action), the Court is precluded from granting summary judgment on these counts.

### III. *Conclusion*

The Court is mindful of its grave responsibility to preserve the "open processes of justice." *Richmond Newspapers,* 448 U.S. at 572, 100 S.Ct. at 2824. Accordingly, the Court has considered the parties' briefs and arguments with more than ordinary care.

This Court bows to no one in its zeal to defend the right of a free and vigorous press to expose facts and illuminate ideas which will enlighten the public. At the same time, this Court is deeply concerned at the prospect of a tainted conviction for a capital offense.

The Court observes, however, that even upon careful review this is ultimately an insubstantial matter. Is this really a constitutional case at all? It seems to be a squabble which should have been resolved by a good will request and a reasoned response.

Based on the files, records, and proceedings herein, and for the reasons set forth above, IT IS ORDERED that:

1. Plaintiffs' motion for summary judgment is denied.

2. Defendants' motion for summary judgment on the issue of qualified immunity on Count I, with respect to the deputy's liability for damages, is granted.

3. Defendants' motions for summary judgment on Count I, with respect to declaratory and injunctive relief, and on Counts II and III are denied.

4. The parties' motions for costs are denied.