# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-3708

_____

JoAnn Brandon, Personal Representative  *
of the estate of Teena Brandon,        *
Deceased,                                *
                                          *
      Plaintiff-Appellant,        *
                                          *
     v.                                   *
                                          *
John Lotter; Marvin Nissen;       *   Appeal from the United States
                                        *   District Court for the
       Defendants.           *   District of Nebraska
                                          *
Charles B. Laux, Richardson County  *
Sheriff,                            *
                                          *
      Defendant-Appellee.      *

_____

Submitted:  May 11, 1998

Filed:  August 28, 1998

_____

Before McMILLIAN, ROSS and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

JoAnn Brandon, as the personal representative of the estate of her daughter, Teena Brandon, appeals from a final order[1] entered in the United States District Court for the District of Nebraska[2] granting summary judgment in favor of appellee, Charles B. Laux, on her 42 U.S.C. § 1986 claim.[3] Brandon v. Lotter, 976 F. Supp. 872 (D. Neb. 1997) (Brandon). For reversal, appellant argues that the district court erred in granting summary judgment in favor of appellee on the basis of qualified immunity. For the reasons discussed below, we affirm the judgment of the district court.

## Jurisdiction

The district court had proper jurisdiction pursuant to 28 U.S.C. § 1343. Appellant timely filed a notice of appeal under Rule 4(a) of the Federal Rules of Appellate Procedure. Jurisdiction is proper on appeal under 28 U.S.C. § 1291.

---

[1]The district court's order was entered in favor of Laux pursuant to Fed. R. Civ. P. 54(b). Brandon v. Lotter, 976 F. Supp. 872, 878 (D. Neb. 1997).

[2]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

[3]Title 42 U.S.C. § 1986 permits survival of an action against a person who had the power to prevent or aid in preventing a wrong actionable under the civil rights acts and who neglected or refused to do so. Id. The action survives, however, only if the victim died as a result of the wrong. Id.

## Facts[4]

Teena Brandon was a twenty-one-year-old woman who dressed "like a male." On December 24, 1993, John Lotter and Marvin Nissen (also known as Tom Nissen) raped and brutally assaulted Brandon. The incident began at a gathering in Richardson County, Nebraska, at which heavy alcohol consumption took place. During the evening Lotter told Brandon that he wanted to have sex with her. After Brandon refused Lotter's advances, he grabbed Brandon's hands while Nissen pulled her pants and underwear to the floor. Later, the two men cornered Brandon in the bathroom and Lotter held the door closed while Nissen hit Brandon in the head, kicked her in the ribs, and stepped on her. The men then dragged Brandon out to their car and drove to a remote location where they each raped her. After the rape, Nissen again brutally beat Brandon and threatened her not to tell anyone about the incident. The men then took Brandon to Nissen's house where she escaped by climbing out of a bathroom window.

The following day, Brandon went to the authorities and was interviewed by Deputy Olberding and appellee Laux, the then-duly elected sheriff of Richardson County. Brandon gave a three-page written statement detailing the rape and assault. Brandon also stated that she was willing to sign a complaint and testify against Lotter and Nissen. Laux asked Brandon crude questions about the incident, telling Brandon that they were necessary in order to present the case to the County Attorney. Laux also questioned Brandon why she dressed "like a male" and why she socialized with females instead of males. Brandon canceled two follow-up appointments with Laux because she feared his abusive treatment.

---

[4]We briefly summarize the material facts, which are largely undisputed, in the light most favorable to appellant based on the district court's order granting summary judgment, see Brandon, 976 F. Supp. at 873–76, and the record on appeal.

Upon realizing that they could go to prison for assaulting and raping Brandon, Lotter and Nissen immediately began to discuss killing Brandon, to prevent her from testifying against them. Lotter and Nissen were the only two persons who participated in those discussions. On December 28, 1993, a Falls City police officer interviewed Lotter and Nissen regarding Brandon's allegations, thereby putting Lotter and Nissen on notice that they were suspected of a crime. On December 30, 1993, the sheriff's office completed the paperwork necessary to obtain arrest warrants for Lotter and Nissen, but warrants were not issued. Later that evening, Lotter and Nissen formed their specific plan about how to kill Brandon. The following day, on December 31, 1993, Lotter and Nissen broke into the home of Lisa Lambert where Brandon was staying and, upon finding Brandon, Lotter shot her and Nissen stabbed her, fatally. Lotter and Nissen also killed Lambert and Phil Devine, who were present at Lambert's home.

On or about September 8, 1995, appellant filed the instant action against Lotter, Nissen, and Laux in the United States District Court for the District of Nebraska asserting claims under 42 U.S.C. §§ 1983, 1985, 1986, and 1988. Amended Complaint ¶ VII. With respect to Laux, appellant alleged that Laux knew that Lotter and Nissen had conspired to deprive Brandon of her civil rights by killing her for being a woman in violation of 42 U.S.C. § 1985 and neglected or refused to prevent this conspiracy in violation of 42 U.S.C. § 1986. Id. ¶¶ XXXIV–XLI. Laux moved for summary judgment and for judgment as a matter of law. The district court granted Laux's motion for summary judgment, holding that Laux was entitled to qualified immunity.

**Discussion**

We review a grant of summary judgment de novo. The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.

-4-

R. Civ. P. 56(c); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (Anderson); Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992); St. Paul Fire & Marine Ins. Co. v. FDIC, 968 F.2d 695, 699 (8th Cir. 1992). "In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law." Hartnagel v. Norman, 953 F.2d 394, 396 (8th Cir. 1992) (citing Anderson, 477 U.S. at 254).

Title 42 U.S.C. § 1986 provides a cause of action against "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of . . . [T]itle [42], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do so, if such wrongful act be committed." Id. (emphasis added). Liability under § 1986 "'is dependent on proof of actual knowledge by a defendant of the wrongful conduct.'" Owen v. City of Independence, 445 U.S. 622, 674 n.15 (1980) (Owen) (quoting Hampton v. City of Chicago, 484 F.2d 602, 610 (7th Cir. 1973)). Thus, in order to maintain her § 1986 action, appellant would have to prove that: "(1) [Laux] had actual knowledge of a § 1985 conspiracy, (2) [Laux] had the power to prevent or aid in preventing the commission of a § 1985 conspiracy, (3) [Laux] neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed."[5]  Clark v. Clabaugh, 20 F.3d 1290, 1295 (3d Cir. 1994) (Clark) (citations omitted). "[F]irsthand knowledge is not required under § 1986. The courts have nevertheless required 'actual knowledge.'" Id. at 1296 (citations omitted).

---

[5]Appellant alleges that Lotter and Nissen conspired in violation of 42 U.S.C. § 1985(2) & (3) for the purpose of hindering justice with the intent to deny Brandon equal protection of the laws. Specifically, appellant maintains that the sexual assault and killing of Brandon were done in furtherance of a conspiracy to deny Brandon her First, Fifth, and Fourteenth Amendment rights because she was a woman who dressed like a man and associated with other women.

As noted above, the district court dismissed appellant's § 1986 claim against Laux on the ground that he is entitled to qualified immunity. <u>Brandon</u>, 876 F. Supp. at 878. Assuming, without deciding, that Brandon's allegations pertained to a right that was clearly established, the district court held that "the failure to immediately arrest [Lotter and Nissen] or warn Brandon that the arrest would be delayed did not violate clearly established law." <u>Id.</u> at 877–78 (citing <u>Ricketts v. City of Columbia</u>, 36 F.3d 775, 780 (8th Cir. 1994) (<u>Ricketts</u>) (holding under § 1983 that rape and murder were not reasonably foreseeable where prior reported incidents of harassment were too remote in time, arrest for prior harassment could have spawned retaliatory violence, and there was no realistic chance for police protection because police were called after violence occurred)). The district court reasoned that

> a reasonable person (including a reasonable law enforcement officer) in Laux's position would not have had "actual knowledge" that the "wrongs conspired to be done, and mentioned in section 1985 . . . [were] about to be committed."
>
> ****
>
> To be precise, a reasonable law enforcement officer could have believed that Lotter and Nissen were not about to harm Brandon, and thus a reasonable officer could have believed that inaction was warranted.

<u>Id.</u> (citation omitted in original). The district court relied, <u>inter alia</u>, on the facts that Brandon's failure to keep two appointments with Laux could reasonably be perceived as an indication that she did not fear imminent peril and that Lotter and Nissen kept their plans secret. <u>Id.</u> at 878.

Appellant contends that qualified immunity does not apply to claims brought under 42 U.S.C. § 1986. In the alternative, appellant argues that the district court incorrectly applied the test for qualified immunity. We do not reach either of these arguments in this appeal. Rather, we affirm the district court's order on the alternative ground that appellant has failed to demonstrate a genuine issue of material fact as to

Laux's knowledge of a § 1985 conspiracy between Lotter and Nissen against Brandon. E.g., United States v. Sager, 743 F.2d 1261, 1263 n. 4 (8th Cir. 1984) (court of appeals can affirm judgment of district court on any ground supported by the record), cert. denied, 469 U.S. 1217 (1985).

Viewing the record (in particular the transcript of Brandon's tape-recorded interview with Laux and Deputy Olberding and her three-page written statement detailing the rape and assault) in the light most favorable to appellant, we find no evidence that Laux knew (or even should have known) of a § 1985 conspiracy between Lotter and Nissen against Brandon. At best, the facts show that Laux knew that Lotter had a criminal history, Joint Appendix, Transcript of Interview at 19, that Lotter and Nissen had brutally beaten and sexually assaulted Brandon, see generally id., that Lotter was capable of aggravated sexual assault,[6] id. at 15, that Brandon escaped from

---

[6]Specifically, appellant relies on the following exchange between Brandon and Laux:

**LAUX**: Well it doesn't make any difference if everybody was there now, you were all half-ass drunk. And knowing these guys, it wouldn't make no difference to John what he did in front [of] everybody else. He would think it was funny. Huh. I can't believe that he pulled your pants down and you are a female that he didn't stick his hand in you or his finger in you.

**BRANDON**: Well he didn't.

**LAUX**: Can't believe he didn't.

Joint Appendix, Transcript of Interview at 15. In light of Laux's stated disbelief that Lotter did not further assault Brandon when her pants were down, appellant argues that it is unreasonable to hold that Laux did not believe that the men would further assault Brandon after they raped her and upon learning that she had reported the incident to authorities.

Lotter and Nissen by climbing through a bathroom window, id. at 10, and that Lotter had threatened Brandon not to tell anyone about the assaults. Id. at 8. Appellant asserts that there is a genuine issue of material fact as to whether, knowing of these facts, Laux also knew that Brandon was in imminent peril. We disagree.

There was no evidence that Laux knew of Lotter's and Nissen's conspiracy to harm Brandon and it does not follow that Laux's knowledge of the above facts constitutes actual knowledge under § 1986 of their § 1985 conspiracy against Brandon. See, e.g., Owen, 445 U.S. at 674 n.15; see also Clark, 20 F. 3d at 1296-97 (vacating court order granting summary judgment on interracial youth group's § 1986 action against municipal defendants and remanding on ground that genuine issue existed as to "knowledge" element in light of Mayor's and police chief's awareness of rumors that dissident group conspired to engage in civil unrest). Whether it was poor judgment to fail to arrest Lotter and Nissen immediately, to fail to inform Brandon that they had not been arrested, or to fail otherwise to protect Brandon from Lotter and Nissen are questions that might underlie a legal cause of action.[7] They are not, however, proper bases for a claim under § 1986.[8] Furthermore, we recognize the caution that federal courts must exercise in reviewing the highly discretionary decisions that law enforcement officers are called upon to make, particularly in the area of arrests. See Ricketts, 36 F.3d at 780 ("Holding that an officer's failure to arrest for one incident of harassment causes a subsequent incident of harassment or violence would essentially

---

[7]See, e.g., Brandon v. County of Richardson, 566 N.W.2d 776 (Neb. 1997) (reversing and remanding with directions state district court's dismissal of action against Richardson County and Laux under Nebraska law for wrongful death, intentional infliction of emotional distress, and other claims on grounds that (1) a special relationship was created that gave rise to officers' duty to protect Brandon after she reported the rape to the police and offered to aid in the prosecution, and (2) claim for intentional infliction of emotional distress survived Brandon's death).

[8]Similarly, Laux's callousness toward Brandon during her interview cannot be remedied under § 1986 without evidence that Laux was aware of a § 1985 conspiracy.

take away the officer's discretion to determine when to arrest–a fundamental part of our criminal system. . . . This in turn 'would open municipalities to unprecedented liability under § 1983.'") (citations omitted)); cf. Bisbee v. Bey, 39 F.3d 1096, 1101 (10th Cir. 1994) ("When a statute reaches action taken by governmental officials, courts must always be concerned about the law's potentially chilling effect on official conduct.").

Accordingly, we affirm the order of the district court.


A true copy.


Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.