**GET AWAY CLUB, INC.,** Appellee,

v.

**Vic COLEMAN, Jim Snyder,** Appellants.

No. 91–2278.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 14, 1992.
Decided July 13, 1992.

J. Mark Lewis, Asst. Atty. Gen., Little Rock, Ark., argued, for appellants.

Bill McLean, Little Rock, Ark., argued, for appellee.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and HANSEN, Circuit Judge.

HANSEN, Circuit Judge.

Appellants Vic Coleman and Jim Snyder (the "troopers"), both members of the Arkansas State Police, appeal from the district court's partial denial of their motion for summary judgment on claims brought against them pursuant to 42 U.S.C. § 1983 (1988) in violation of the Fifth and Fourteenth Amendments. The district court held that the troopers were not entitled to qualified immunity and that a genuine issue of material fact still exists concerning the location and frequency of the state police roadblocks which are at the core of Get Away's complaint. We reverse in part, affirm in part, and remand the case to the district court for further proceedings consistent with this opinion.

I.

The troopers conducted both roadblocks and stationary patrols in 1989 along Highway 165 near Dumas, Arkansas, on which both Get Away Club, Inc. and another competing liquor-dispensing establishment, Pendleton Marina, are located. Get Away contends that the troopers have impermissibly "singled-out" its premises by conducting the roadblocks and stationary patrols "approximately three or four times per week within 200 yards" of its premises. Get Away alleges that the troopers' actions

have caused an economic hardship by depriving it of "significant revenues." Get Away argues that this action constitutes a taking of property under the Fifth Amendment without the payment of just compensation.

The troopers disagree. They contend that the 1989 police radio log indicates that only five roadblocks were conducted in 1989 along Highway 165. Moreover, the troopers contend that the roadblocks were conducted outside the view from Get Away's premises. The troopers also emphasize the fact that they conducted the roadblocks and stationary patrols in conformity with the consent decree entered into by the Arkansas State Police that sets forth the specific requirements for conducting a lawful roadblock in the State of Arkansas. *See Garrett v. Goodwin,* 569 F.Supp. 106 (E.D.Ark.1982). The troopers moved for summary judgment arguing, among other things, that they are entitled to qualified immunity on the claim for civil damages and that they are entitled to judgment as a matter of law because no genuine issue of material fact exists.

The district court granted summary judgment in favor of the troopers on Get Away's claim seeking relief on behalf of its patrons under the Fourth Amendment and on the alleged violations of the consent decree. The district court, however, denied summary judgment to the troopers on the issue of qualified immunity and also held that a material factual dispute remains concerning the location and frequency of the roadblocks and stationary patrols. The troopers appeal from this order.

## II.

On appeal, this court's standard in reviewing a denial or grant of summary judgment by the district court is de novo. *United States ex rel. Glass v. Medtronic, Inc.,* 957 F.2d 605, 607 (8th Cir.1992). Therefore, we apply the same standard as applied by the district court. *United Tel. Co. of Mo. v. Johnson Publishing Co., Inc.,* 855 F.2d 604, 607 (8th Cir.1988). We examine the entire record in the light most favorable to Get Away. *Economy Housing*

*Co. v. Continental Forest Products, Inc.,* 757 F.2d 200, 203 (8th Cir.1985) (citation omitted). Summary judgment is appropriate when there is no dispute between the parties as to any genuine issue of material fact and when the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c). Therefore, the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment to the troopers. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Instead, "the dispute must be outcome determinative under prevailing law." *Holloway v. Pigman,* 884 F.2d 365, 366 (8th Cir.1989) (citation omitted).

## III.

The troopers first argue that they are entitled to qualified immunity on the issue of civil damages as to Get Away's contention that their conduct constituted a taking under the Fifth Amendment. The troopers contend that they acted in good faith and complied at all times with the consent decree. Get Away responds by arguing that the district court's denial of qualified immunity is correct because the troopers "either intentionally or by reckless disregard for [its] rights, have embarked on an alleged unreasonable course of conduct which could only damage [its] business."

In *Siegert v. Gilley,* —— U.S. ——, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991), the Supreme Court clarified the proper analysis for determining when a public official is entitled to qualified immunity. First, Get Away must assert a violation of its constitutional rights. *Id.* If no constitutional right has been asserted, Get Away's complaint must be dismissed. *Id.* If, however, Get Away asserts a violation of its constitutional rights, the second step in the analysis is to decide whether the applicable law pertaining to the constitutional right in question was "clearly established." *Id.* "If the law was clearly established, the [qualified] immunity defense ordinarily should fail, since a reasonably competent public official should know the law

governing [one's] conduct." *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). On the other hand, "[i]f the law at that time was not clearly established, [the troopers] could not reasonably be expected to anticipate subsequent legal developments, nor could [t]he[y] fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* at 818, 102 S.Ct. at 2738. This "qualified immunity [defense] accommodates competing social interests by ensuring that officials who 'knowingly violate the law' are held accountable, while officials who reasonably exercise their discretion may do so without fear of being sued." *Warner v. Graham*, 845 F.2d 179, 182 (8th Cir.1988) (citing *Arcoren v. Peters*, 829 F.2d 671, 673 (8th Cir.1987) (en banc), *cert. denied*, 485 U.S. 987, 108 S.Ct. 1290, 99 L.Ed.2d 500 (1988)). If Get Away can show that the troopers' conduct violated clearly established law, "then the [troopers], as the movant[s] for summary judgment, must demonstrate that no material issues of fact remain as to whether the [troopers'] actions were objectively reasonable in light of the law and the information the [troopers] possessed at the time of [their] actions." *Salmon v. Schwarz*, 948 F.2d 1131, 1136 (10th Cir.1991) (citations omitted).

■ Get Away asserts that the troopers' actions in conducting the roadblocks and stationary patrols constituted a taking of property without just compensation in violation of its Fifth Amendment rights. Get Away has therefore met the first step in the qualified immunity analysis as required by *Harlow* and *Siegert.* Next, Get Away bears the burden of proving that the law pertaining to the Takings Clause of the Fifth Amendment was "clearly established" in 1989 when the troopers conducted the roadblock and stationary patrols. In other words, the law in 1989 must have been sufficiently clear that the troopers would have reasonably known that their actions violated Get Away's "basic, unquestioned constitutional rights." *See Warner v. Graham*, 845 F.2d 179, 182 (8th Cir. 1988); *see also Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1986).

"The question of what constitutes a 'taking' for purposes of the Fifth Amendment has proved to be a problem of considerable difficulty." *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 123, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). "There is no 'set formula' for determining when 'justice and fairness' require [that] governmental action be deemed a 'taking of property' under the [F]ifth [A]mendment." *In Re Prines*, 867 F.2d 478, 485 (8th Cir.1989) (citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005, 104 S.Ct. 2862, 2874, 81 L.Ed.2d 815 (1984)). Indeed, the analysis depends largely " 'upon the particular circumstances [in that] case.' " *Penn Cent.*, 438 U.S. at 124, 98 S.Ct. at 2659 (quotation omitted). We must " 'examine[ ] the 'taking' question by engaging in essentially ad hoc, factual inquiries that have identified several factors—such as the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the governmental action—that have particular significance.' " *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 349, 106 S.Ct. 2561, 2566, 91 L.Ed.2d 285 (1985) (quotations omitted).

■ Get Away contends that the law in 1989 clearly established that the troopers' actions in question constituted a taking under the Fifth Amendment. We disagree. First, Get Away fails to cite any authority holding that the establishment of a state police roadblock which momentarily detains motorists constitutes a taking of a non-detained person's property under the Fifth Amendment. We were equally unable to discover any authority supporting this novel argument.

■ Second, with regard to the economic impact of the roadblock, Get Away baldly asserts that the troopers' conduct has caused "great revenue losses" and that the troopers have "targeted" its establishment with the "specific purpose of chilling its business." Such assertions are conclusory and fail to meet the rule's mandate to come forward with "specific facts showing there

is a genuine issue for trial." Fed.R.Civ.P. 56(e).

■ Third, regarding the interference with reasonable investment-backed expectations, Get Away apparently argues that it has a reasonable investment-backed expectation that its patrons should be able to drink on its premises without having to worry about being stopped by the police at a safety check or sobriety roadblock but fails to cite any authority for this argument. Moreover, "[a] 'reasonable investment-backed expectation' must be more than a 'unilateral expectation or an abstract need' to be entitled to protection under the fifth amendment." *In Re Prines*, 867 F.2d at 485 (quoting *Ruckelshaus*, 467 U.S. at 1005, 104 S.Ct. at 2874). We find this argument to be without merit. Furthermore, according to Trooper Snyder's sworn affidavit, the Arkansas State Police have conducted sobriety roadblocks at this particular point on Highway 165 for approximately 10 years beginning in 1981. The President of Get Away confirmed the fact that his liquor establishment moved to its current location on Highway 165 in May 1987. Up until that time, a Massey Ferguson tractor dealership was located where Get Away is currently located. Therefore, Get Away knew or should have known that roadblocks have traditionally been conducted on this particular stretch of highway.

Finally, concerning the character of the governmental action, the United States Supreme Court recently upheld the constitutionality of a similar roadblock in the State of Michigan by concluding that the State has a legitimate interest in curbing drunken driving and that the degree of intrusion on motorists during these roadblocks was minimal. *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990). Get Away admitted the following facts: "(1) that the troopers were in uniform during all [of the roadblocks and stationary patrols]; (2) that the stops were not at random but uniform and brief in time; (3) that the roadblocks each lasted approximately one hour and the encounter [with individual drivers] was done in a safe manner and lasted approximately 15–20 seconds provided there was no legal reason to proceed further; and (4) the roadblocks were supervised by management as required by the consent decree." *Get Away Club, Inc. v. Snyder*, No. PB-C-90-18, slip op. at 3-4 (E.D.Ark. May 29, 1991). We note the numerous similarities between the police conduct in *Sitz* and the troopers' conduct in this case. Although *Sitz* involved a Fourth Amendment search and seizure issue rather than a Fifth Amendment takings issue, the similarities between the roadblocks reinforce our conclusion that the troopers would not have reasonably known that their actions clearly violated Get Away's "basic, unquestioned constitutional rights." Furthermore, Get Away admitted that the troopers fully complied with the consent decree entered into by the Arkansas State Police which sets forth the specific requirements for conducting a lawful roadblock in the State of Arkansas.

■ After carefully reviewing the entire record, we conclude that the law pertaining to the Takings Clause of the Fifth Amendment at the time the troopers conducted the roadblocks and the stationary patrols in 1989 was not so "clearly established" that the troopers would have reasonably known that their actions in conducting the roadblocks and the stationary patrols violated Get Away's "basic, unquestioned constitutional rights." *See Warner*, 845 F.2d 179; *see also Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. For this reason, we hold that the troopers are entitled to qualified immunity from any civil damages in their individual capacities. *See Anderson*, 483 U.S. at 638–39, 107 S.Ct. at 3038. Furthermore, when sued for monetary damages in their official capacities, the troopers are not considered "persons" subject to suit within § 1983 and therefore, the troopers are immune from any civil damages in their official capacities as well. *Hafer v. Melo*, —— U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

## IV.

■ The troopers also argue that the district court erred in refusing to order

summary judgment on Get Away's claim for prospective injunctive and declaratory relief after concluding that there remains a genuine issue of material fact regarding the frequency and location of the roadblocks and stationary patrols. Fed. R.Civ.P. 56(c). As previously mentioned, Get Away alleges that the troopers conducted the roadblocks and the stationary patrols in 1989 approximately three or four times per week within 200 yards of its premises. In contrast, the troopers contend that they conducted only five roadblocks during 1989 at this particular location. The district court reviewed the police radio logs, concluded that there was not a sufficient explanation to determine the location and the frequency of the roadblocks and, therefore, denied the troopers summary judgment by holding that a material factual dispute still exists. We agree. Viewing the record in the light most favorable to Get Away, a material factual dispute still exists. Therefore, we affirm the district court's denial of the troopers summary judgment on Get Away's claim for prospective injunctive and declaratory relief. We refrain from forming or expressing an opinion on whether the troopers' conduct actually constitutes a taking under the Constitution. That issue is not before us at this time and is more properly determined by the district judge.

## V.

Accordingly, the troopers are entitled to qualified immunity on Get Away's civil claim for monetary damages. Additionally, a material factual dispute remains on the issues of frequency and location of the roadblocks and therefore the district court correctly denied the troopers summary judgment on Get Away's claim for prospective injunctive and declaratory relief. The judgment of the district court is reversed in part, affirmed in part, and the case is remanded to the district court for further proceedings consistent with this opinion.