# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3699

_____

Carl W. Bailey,                     *

                           *

           Appellant,           *

                           *    Appeal from the United States

      v.                     *    District Court for the

                           *    Western District of Missouri.

Bayer CropScience L.P.;        *

Greg Moorer;[1] Jamie Jackson,    *

                           *

          Appellees.          *

_____

Submitted: October 17, 2008
Filed: April 9, 2009

_____

Before RILEY, BOWMAN, and COLLOTON, Circuit Judges.

_____

RILEY, Circuit Judge.

Carl W. Bailey, Sr. (Bailey) filed suit against Bayer CropScience (BCS) in Missouri state court, alleging intentional infliction of emotional distress (IIED). BCS removed the case to federal court. Bailey subsequently moved to amend the complaint by adding two additional defendants. Bailey did not notify the court such joinder

_____

[1] Gregory Moorer's last name is spelled two different ways in the record. For consistency, we will use Moerer, the spelling primarily used by the parties.

would destroy diversity. The district court[2] permitted joinder, and Bailey then moved to remand due to lack of jurisdiction. Upon learning the joinder destroyed diversity, the district court reconsidered its prior decision, and dismissed the joined defendants. BCS moved for summary judgment, and the court granted the motion. Bailey now appeals, alleging (1) the district court abused its discretion in dismissing a properly joined defendant, and (2) the district court erred in granting summary judgment. We affirm.

## I.    BACKGROUND

Bailey, an African-American male, worked for BCS, a pesticide manufacturing facility located in Kansas City, Missouri, from August 1996 until December 2003. In August 2001, BCS moved Bailey from the production area to security. Bailey claims he was demoted due to a low score he received on an aptitude test. BCS contends Bailey was transferred, along with eight other employees, because there was not enough work on the production line. Bailey alleges he repeatedly asked to see his test score, but was not permitted to see his score until December 19, 2001. Bailey asserts the confrontation which led to this lawsuit occurred forty-five minutes after Bailey received his test score.

Both parties agree Gregory Moerer (Moerer), a BCS manager, and Jamie Jackson (Jackson), a Human Resources representative, contacted Bailey on December 19, 2001, and asked him to meet with them in the personnel office. During that meeting, Jackson and Moerer told Bailey someone accused Bailey of sexual harassment. Bailey became very upset and started frantically guessing who made the complaint. Jackson and Moerer then implied the person who made the allegation was not a female. In response, Bailey asked, "Are you trying to say I'm gay?" and Jackson allegedly shrugged his shoulders. Jackson and Moerer eventually informed Bailey

---

[2]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

another BCS employee, Michael Shipley (Shipley), made the allegation. During the course of this litigation, Shipley submitted an affidavit in which he denied ever making a complaint of sexual harassment against Bailey. The December 19, 2001, meeting lasted less than twenty minutes, and throughout the meeting, Bailey was emotional, which included yelling, swearing, and crying. When the meeting was over, BCS granted Bailey several days off work, with pay, to compose himself. Bailey alleges the purpose of the meeting was to punish him for demanding to see his test score.

Bailey claims when he returned to work, several co-workers knew something about the allegations despite Moerer's assurances the incident would remain confidential. Some of these co-workers were supportive, while others began to treat Bailey differently. On one occasion, Bailey felt as though he had to shower in a separate locker room to avoid the reaction of other male employees. Bailey also began regularly to suffer panic attacks. When Bailey sought treatment, he was diagnosed with post-traumatic stress disorder (PTSD). His symptoms included depression, fear, flashbacks, nightmares, memory loss, confusion, and psychotic episodes. Bailey continued to work at BCS and was later transferred, along with eight other employees, back to the production area. Bailey received the highest possible rating for his work performance when he was evaluated at the end of 2001.

In August 2002, Bailey suffered a severe panic attack while at work. As a result, the BCS medical department advised him to seek further treatment and not to return to work until he was released by his psychiatrist. Bailey continued with treatment and medication and was placed on paid medical leave. Bailey remained off work receiving company disability payments and other benefits until December 2003. At that time, Bailey's benefits expired and he was offered an open position at BCS. Bailey declined the offer to return to work and his employment was terminated.

Bailey initially filed suit against BCS on February 17, 2006, in the Circuit Court of Jackson County Missouri, alleging IIED.[3] BCS, the only named defendant, removed the action to federal court. On March 15, 2007, over one year after the action was filed and removed, Bailey moved to amend his complaint by adding Jackson and Moerer as defendants. Bailey did not inform the district court such joinder would destroy diversity jurisdiction, and the court granted Bailey's motion to amend. Less than a month later, when Bailey moved for remand to state court, the district court learned Moerer's presence in the suit destroyed diversity jurisdiction. The district court reconsidered its earlier decision granting Bailey's motion to amend and denied the motion. Both Moerer and Jackson were dismissed without prejudice and Bailey was granted leave to join Jackson, so long as Jackson's presence would not destroy diversity. With diversity jurisdiction restored, the district court denied Bailey's motion to remand.

On August 15, 2007, BCS filed a motion for summary judgment. The district court granted BCS's motion, explaining Bailey failed to create a genuine issue of material fact to suggest the behavior of BCS employees rose to the level of extreme and outrageous conduct. This appeal followed.

## II.   DISCUSSION

### A.   Joinder

Bailey argues the district court abused its discretion by (1) reconsidering its previous joinder decision granting Bailey's motion to amend his complaint, (2) subsequently denying the motion, (3) dismissing Moerer and Jackson from the action, and (4) denying Bailey's motion to remand. When a plaintiff requests leave

---

[3]In appeal briefs, Bailey also alludes to filing a claim for negligent infliction of emotional distress (NIED). During oral argument, Bailey's counsel conceded no claim for negligent infliction of emotional distress had been made. We find no NIED claim alleged or pursued in the district court, and we will not address any NIED assertion now.

to amend his complaint before trial, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "[P]ermission to amend may be withheld if the plaintiff . . . is guilty of undue delay, bad faith, dilatory motive, or if permission to amend would unduly prejudice the opposing party." Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 224 (8th Cir. 1994) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). "The trial court's decision whether to allow amendment will be reviewed only for an abuse of discretion." Id. "We review the district court's denial of the remand motion de novo." Menz v. New Holland North America, Inc., 440 F.3d 1002, 1004 (8th Cir. 2006).

First, we must consider whether the district court could reconsider Bailey's motion to amend his complaint. Several courts hold, when a trial court grants a plaintiff leave to amend the complaint by naming additional defendants, and the plaintiff fails to inform the court that one or more of those defendants will destroy diversity, the trial court may reconsider its earlier decision. See, e.g., Faye v. High's of Baltimore, 541 F. Supp. 2d 752, 756-58 (D. Md. 2008) (listing cases). In Le Duc v. Bujake, 777 F. Supp. 10, 11-12 (E.D. Mo. 1991) (citing Hensgens v. Deere & Co., 833 F.2d 1179, 1182 (5th Cir. 1987)), the court explained,

> Where, as here, the record indicates that the problem of the addition of the non-diverse defendant was not brought to the attention of the Court or recognized by the parties, the filing of the amended complaint should be considered a nullity and the Court given an opportunity to consider whether justice requires that [the plaintiff] be permitted to join [the additional] defendant.

In the present case, the district court granted Bailey's motion to amend his complaint and permitted Bailey to name two additional defendants without the court realizing such joinder destroyed the court's diversity jurisdiction. When the district court discovered the joinder defeated diversity jurisdiction, the court had discretionary authority to reconsider and reverse its previous joinder decision.

Second, we must determine whether the district court abused its discretion when, upon reconsideration, it denied Bailey's motion to amend. When an action is removed from state to federal court, and "after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). Joinder would be required if the plaintiff satisfied Fed. R. Civ. P. 19 by showing that the new parties are necessary and indispensable to a full resolution of the case. The plaintiff must first satisfy Fed. R. Civ. P. 19(a) by showing the new parties are necessary to a full resolution of the case. Joinder of Moerer and Jackson under Rule 19(a) is not required because their absence would not impair the court's ability to accord complete relief between Bailey and BCS, and neither Moerer nor Jackson have claimed an interest relating to the subject of the action.

Even if Moerer and Jackson were determined to be necessary parties under Rule 19(a), they are not indispensable parties pursuant to Fed. R. Civ. P. 19(b). If a potential defendant, whose joinder would destroy jurisdiction, is determined to be indispensable, the district court must either permit joinder and grant remand under § 1447(e), or dismiss the action pursuant to Rule 19(b). Only when the potential defendant is deemed dispensable may the district court deny joinder and retain jurisdiction over the action. "The determination of whether or not a person is an indispensable party is one which must be made on a case-by-case basis and is dependant upon the facts and circumstances of each case." Helzberg's Diamond Shops, Inc. v. Valley West Des Moines Shopping Center, Inc., 564 F.2d 816, 819 (8th Cir. 1977) (citations omitted). The factors to consider when determining whether a party is indispensable include:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:
    (A) protective provisions in the judgment;
    (B) shaping the relief; or
    (C) other measures;
(3) whether a judgment rendered in the person's absence would be adequate; and
(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

We find none of these factors mandate joinder of Moerer and Jackson. Bailey alleges Moerer, Jackson, and BCS were joint tortfeasors. "It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." Temple v. Synthes Corp., Ltd., 498 U.S. 5, 7 (1990) (citations omitted). Instead, tortfeasors with joint and several liability are merely permissive parties. Id. In the present case, Moerer and Jackson are not indispensable parties, and the district court had full discretionary authority to deny joinder and retain jurisdiction over the action.

The district court's decision is further supported by Rule 21 of the Federal Rules of Civil Procedure. Under Rule 21, "the court may at any time, on just terms, add or drop a party." The Supreme Court has explained, "Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered." Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 832 (1989). The district court accurately determined the joined defendants were dispensable parties under Rule 19(b), and the district court did not abuse its discretion in dismissing Moerer and Jackson from the action.

The district court also properly considered whether justice required Moerer and Jackson be joined as defendants and the case remanded to state court. As the Fifth Circuit spelled out:

-7-

The district court, when faced with an amended pleading naming a new nondiverse defendant in a removed case, should scrutinize that amendment more closely than an ordinary amendment. Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "should be freely given when justice so requires," and Rule 20 permits joinder of proper parties. In this situation, justice requires that the district court consider a number of factors to balance the defendant's interests in maintaining the federal forum with the competing interests of not having parallel lawsuits.

Hensgens, 833 F.2d at 1182 (creating a balancing test which has been adopted by courts in various jurisdictions). "[T]he Court is required to consider 1) the extent to which the joinder of the nondiverse party is sought to defeat federal jurisdiction, 2) whether [the] plaintiff has been dilatory in asking for amendment, and 3) whether [the] plaintiff will be significantly injured if amendment is not allowed." Le Duc, 777 F. Supp. at 12 (citing Hensgens, 833 F.2d at 1182). See also, Alpers Jobbing Co. v. Northland Cas. Co., 173 F.R.D. 517, 520 (E.D. Mo. 1997) (collecting cases which had adopted the Hensgens balancing test).

In the present case, the district court accurately considered the relevant factors and held the balancing test weighed against the addition of the nondiverse defendant. First, Bailey waited a year before filing his motion to amend. When he finally filed the motion, Bailey failed to inform the court such joinder would destroy diversity. Less than a month after the joinder order, Bailey filed a motion for remand, suggesting he had known about the jurisdictional issues. These facts and reasonable inferences support the district court's conclusion the defendants were joined primarily for the purpose of defeating federal jurisdiction.

Second, Bailey knew all of the involved parties before he filed the action. Despite knowing all the parties, Bailey originally filed suit only against BCS, waiting over a year before submitting a motion to join Moerer and Jackson. Bailey claims this delay resulted from his lack of knowledge as to the residences of the two putative

defendants. Yet, no evidence in the record suggests Bailey previously made unsuccessful attempts to determine the residences of Moerer and Jackson. The record sufficiently supports the district court's conclusion Bailey was dilatory in filing his motion to name additional defendants.

Finally, because Bailey alleged the parties were joint tortfeasors, Bailey will not be significantly injured if amendment is not allowed. Thus, the district court did not abuse its discretion in first reconsidering, and then in denying Bailey's motion to amend his complaint. Upon denying Bailey's motion, diversity jurisdiction was restored, and the district court properly denied Bailey's motion to remand.

## B.    Summary Judgment

Bailey also maintains the district court erred in granting BCS's motion for summary judgment. "We review de novo the district court's order granting the defendant's motion for summary judgment." Seymour v. City of Des Moines, 519 F.3d 790, 795 (8th Cir. 2008). "Summary judgment is appropriate when the evidence viewed in the light most favorable to the nonmoving party presents no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." Id. at 796. The mere existence of a factual dispute between the parties is not sufficient to deny a summary judgment motion. See Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992). Instead, the disputed issue of fact must be material to determining the outcome of the controversy. Id.

To state a claim for IIED under Missouri law, "a plaintiff must plead extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm." Gibson v. Brewer, 952 S.W.2d 239, 249 (Mo. 1997) (en banc) (citing K.G. v. R.T.R., 918 S.W.2d 795, 799 (Mo. 1996) (en banc)). The defendant's intent in acting must have been "only to cause extreme emotional distress to the victim." Id. (citing K.G., 918 S.W.2d at 799). "The conduct must have been 'so outrageous in character, and so extreme in degree, as to go beyond

all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id. (quoting Warrem v. Parrish, 436 S.W.2d 670, 673 (Mo. 1996)). Liability for IIED

> clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt.

Pretsky v. Southwestern Bell Tel. Co., 396 S.W.2d 566, 569 (Mo. 1965) (abrogated on other grounds) (quoting Restatement (Second) of Torts § 46, comment (d) (1965) (Restatement)).

Taking the facts in the light most favorable to Bailey, the alleged events can be summarized as follows: Moerer and Jackson concocted a charge of sexual harassment against Bailey; Moerer and Jackson asked Bailey to meet them in the personnel office; they informed Bailey a complaint of sexual harassment had been made against him; the person who allegedly made the complaint later denied making the charge; during the meeting, Moerer and Jackson permitted Bailey to guess frantically as to who made the allegation; Bailey asked, "Are you trying to say I'm gay?"; Jackson shrugged his shoulders; several of Bailey's co-workers learned about the allegations and began treating Bailey negatively; Bailey perceived male employees glaring at him, particularly in the BCS employee shower; and, as a proximate result, Bailey began having panic attacks and was eventually diagnosed with PTSD.

"Missouri case law reveals very few factual scenarios sufficient to support a claim for IIED." Dunham v. City of O'Fallon, 945 F. Supp. 1256, 1262 (E.D. Mo. 1996) (citing Gibson v. Hummel, 688 S.W.2d 4, 7 (Mo. Ct. App. 1985)). Based on

governing Missouri precedent, we do not think Missouri courts would consider falsely accusing someone of making homosexual advances to be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Brewer, 952 S.W.2d at 249 (quoting Warrem, 436 S.W.2d at 673). See also Ward v. Wal-Mart Stores, Inc., No. 3:05-0777, 2006 WL 3098800, at *3 (M.D. Tenn. Oct. 30, 2006) (holding an "alleged statement made by Defendant's manager, in the presence of three other employees of Defendant, that the prime reason for Plaintiff's termination was that he was 'gay,' does not constitute outrageous conduct as a matter of law"); Carraway v. Cracker Barrel Old Country Store, No. 02-2237, 2003 WL 21685909, at *14 (D. Kan. July 16, 2003) (deciding that spreading of false rumors to former co-workers and customers "that plaintiff stole money, used drugs, had a drinking and/or gambling problem and was [a] lesbian" was not "extreme and outrageous" conduct establishing intentional infliction of emotional distress). But see Joffe v. Vaughn, 873 P.2d 299, 303 (Okl. Civ. App 1993).

Further, there are many undisputed facts in the record which contradict Bailey's assertion Moerer and Jackson intended only to cause Bailey severe emotional distress. Bailey had almost no interaction with either of these supervisors before Moerer and Jackson met with Bailey on December 19, 2001. After the meeting, Bailey was granted several paid days off to compose himself. BCS informed Bailey of available counseling services and provided Bailey with company benefits throughout the remainder of his employment. Bailey also received a positive performance evaluation and was eventually returned to the production line. Although Moerer informed the BCS plant manager a complaint of sexual harassment had been made in the department, no details were given. There is no direct evidence in the record either Moerer or Jackson told anyone that a charge of sexual harassment had been made by Shipley against Bailey. These facts do not suggest a singular intent to cause severe emotional distress.

-11-

Finally, Missouri courts have, in large part, adopted the Restatement's definition of IIED. <u>See</u>, <u>e.g.</u>, <u>Wallace v. Van Pelt</u>, 969 S.W.2d 380, 386 (Mo. Ct. App. 1998) ("In <u>Pretsky v. Southwestern Bell Telephone Co.</u>, 396 S.W.2d 566 (Mo. 1965), our Supreme Court recognized the tort of extreme and outrageous conduct, essentially adopting Restatement (Second) of Torts § 46 (1965)."). "The comments to § 46 are instructive as to the meaning ordinarily attached to the term 'emotional distress.'" <u>Id.</u> The comments explain, "[t]he distress must be reasonable and justified under the circumstances, and there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress, unless it results from a peculiar susceptibility to such distress of which the actor has knowledge." Restatement (Second) of Torts § 46, cmt. j (1965). Thus, a reasonable person standard should be used when determining whether a plaintiff has a claim for IIED. In Bailey's case, two supervisors allegedly reported an accusation that Bailey made homosexual advances toward another male employee. As a result, Bailey suffered severe panic attacks and was diagnosed with PTSD. Bailey's reaction was not one consistent with a reasonable person under the circumstances. The decline of Bailey's mental health is unfortunate, but there is no evidence Moerer or Jackson, or anyone else, knew or suspected how strongly Bailey would react to the allegations or realized Bailey was in a fragile or vulnerable state. <u>Id.</u> As a consequence, Bailey's IIED claim fails and summary judgment was proper.

## III.  CONCLUSION

We affirm the judgment of the district court.


COLLOTON, Circuit Judge, concurring in part and concurring in the judgment.


I agree that the district court did not abuse its discretion in denying Carl Bailey's motion to amend, and that Missouri courts are not likely to extend the cause of action for intentional infliction of emotional distress to the facts of this case. As Bayer CropScience has not argued that Bailey suffered "exaggerated and unreasonable emotional distress," *ante*, at 12 (internal quotation omitted), and there appears to be

no evidence in the record on this question, I do not rely on Bailey's reaction to the alleged events in reaching my conclusion.

_____