**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2702
_____

MICHAEL AVENATTI,
                    Appellant

v.

FOX NEWS NETWORK LLC,
a Delaware Limited Liability Company;
SEAN HANNITY; LAURA INGRAHAM;
MARIA BARTIROMO;HOWARD KURTZ;
SHANNON BREAM; BRET BAIER;
TRISH REGAN; RAYMOND ARROYO; JON SCOTT;
LELAND VITTERT; JONATHAN HUNT
_____

On Appeal from the United States District Court
for the District of Delaware
(District Court No. 1:20-cv-01541)
District Judge: Honorable Stephanos Bibas, Circuit Judge
_____

Argued June 7, 2022

(Filed: July 21, 2022)

Before: AMBRO, RENDELL, and FUENTES, *Circuit
Judges*.

Shawn R. Perez                           [ARGUED]
Suite 113-38
7121 West Craig Road
Las Vegas, NV 89129

*Counsel for Appellant*

Eric M. George                           [ARGUED]
ELLIS GEORGE CIPOLLONE O'BRIEN & ANNAGUEY
2121 Avenue of the Stars
Suite 2800
Los Angeles, CA 90067

David E. Ross, Esq.
ROSS ARONSTAM & MORITZ
1313 North Market Street
Suite 1001
Wilmington, DE 19801

*Counsel for Appellees*

Eugene Volokh
UCLA SCHOOL OF LAW
385 Charles E. Young Drive
Los Angeles, CA 90095

*Counsel for Amicus*

_____

OPINION OF THE COURT

_____

RENDELL, *Circuit Judge*.

The plaintiff is master of his complaint, but his power is not absolute. District courts have authority of their own to structure the litigation before them and, in doing so, prevent manipulation by the parties. This includes policing the addition of new parties whose presence would unravel vested jurisdiction.

Michael Avenatti, surprised to find his case removed from the Delaware Superior Court on diversity grounds, amended his complaint to add a new, nondiverse defendant as of right, *see* Fed. R. Civ. P. 15(a)(1)(A), and then moved for remand. But the District Court rejected Avenatti's motion, invoking its discretionary authority under Federal Rule of Civil Procedure 21 to drop the interloper from the case and restore complete diversity. We conclude this approach was proper, even though the jurisdictional 'spoiler' was added by an amendment as of right. Accordingly, we will affirm.

## I. BACKGROUND

Plaintiff-Appellant Michael Avenatti is a celebrity lawyer who rose to public prominence in early 2018 by representing Stephanie Clifford (a/k/a Stormy Daniels), a woman with whom then-President Trump had allegedly had an extra-marital affair. But Avenatti's freshly minted fame soon took on a different hue when, in November 2018, he was arrested by officers of the Los Angeles Police Department.

Given his public profile, his arrest was covered extensively in the media, including by Defendant-Appellee Fox News Network ("Fox News") and the individual Defendant-Appellees, all of whom were on-air personalities for Fox News. Avenatti claims that the Defendants engaged in a "purposeful and malicious" campaign of defamation and slander against him by lying, on air and in print, about the details of his arrest.

On November 12, 2020, Avenatti sued in Delaware Superior Court. In his initial complaint, he described allegedly defamatory statements made by all the Defendants, including Fox News employee Jonathan Hunt, but Avenatti chose not to name Hunt as a Defendant. Four days later, Fox News removed the case to the U.S. District Court for the District of Delaware, asserting that there was complete diversity among the parties: Avenatti was a California resident, while none of the named Defendants were.[1]

Avenatti did not accept this sudden removal to federal court lying down. Instead, on November 19—three days after the case was removed and seven days after it was initiated—Avenatti filed an amended complaint in the District Court. Because the amended complaint was entered within twenty-

---

[1] As a Delaware citizen, Fox News would not ordinarily have been permitted to remove to federal court in Delaware. *See* 28 U.S.C. § 1441(b)(2). Here, however, removal was proper because Fox News had not been properly served at the time. *See Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152–54 (3d Cir. 2018). It was not necessary for any of the named Fox News employees to join in the removal because they had not yet been served at all. *See Lewis v. Rego Co.*, 757 F.2d 66, 68 (3d Cir. 1985).

4

one days of the initial complaint, Avenatti did not require leave of court or the opposing parties. *See* Fed. R. Civ. P. 15(a)(1)(A). The amended complaint differed in two respects: first, it named Hunt—a California resident—as a Defendant; and second, it alleged that Hunt had published an article online about Avenatti's arrest which included the same defamatory accusations previously attributed to the other Defendants. Five days after filing the amended complaint, Avenatti moved to remand the case back to state court, arguing that his addition of Hunt—who shared Avenatti's California citizenship—had destroyed diversity, thus depriving the Court of subject matter jurisdiction.[2]

The District Court denied remand. *Avenatti v. Fox News Network, LLC,* No. 20-CV-01541-SB, 2021 WL 2143037, at *1 (D. Del. May 26, 2021). In a thorough and well-reasoned opinion, the Court concluded that it had discretionary authority under Rule 21 to drop Hunt from the litigation and thereby restore complete diversity. *Id*. at *2 (citing Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.")). In doing so, the Court considered the four-factor test of *Hensgens v. Deere & Co.*, 833 F.2d 1179 (5th Cir. 1987), to guide its discretion. In *Hensgens*, the Fifth Circuit laid out an open-ended balancing test for considering post-removal amendments that add nondiverse parties, asking:

- "the extent to which the purpose of the amendment is to defeat federal jurisdiction,"

---

[2] In his motion for remand Avenatti informed the District Court that, prior to filing the motion, he had unsuccessfully asked counsel for Fox News to consent to remand.

- "whether plaintiff has been dilatory in asking for [the] amendment,"
- "whether plaintiff will be significantly injured if [the] amendment is not allowed," and
- "any other factors bearing on the equities."

*Id*. at 1182. As we explain below, considering this test as a guide to Rule 21's "just terms" condition was permissible.

Here, the District Court applied the *Hensgens* factors and found: Hunt had been joined to defeat diversity; Avenatti would not be prejudiced by Hunt's excision because he was dispensable; and, although Avenatti had not been dilatory, federal jurisdiction should be retained by dropping Hunt. Accordingly, it dismissed Hunt and retained jurisdiction.

On August 13, 2021, upon Defendants' motion, the District Court dismissed the amended complaint without prejudice, finding that Avenatti had not pled plausible defamation claims against any Defendant. Avenatti did not contest the motion, and, after dismissal, he informed the District Court that he intended to stand on his amended complaint. The Court then dismissed his complaint with prejudice.

This appeal followed. Before us, Avenatti trains his fire on the District Court's denial of remand. He argues that the case should have been returned to state court, and so the District Court was without jurisdiction to dismiss his amended complaint.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review the District Court's orders under 28 U.S.C. § 1291. The District Court's disputed jurisdiction was premised on 28 U.S.C. §§ 1332(a) and 1441. "[A] federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002).

We exercise de novo review over the District Court's denial of the motion to remand, as the underlying basis for the denial implicates a question of law. *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 287 (3d Cir. 2010). If the District Court's invocation of Rule 21 to resolve the remand motion was legally proper, then we review its *application* of the Rule for abuse of discretion. *See DirecTV, Inc. v. Leto*, 467 F.3d 842, 844 n.1 (3d Cir. 2006) ("We review the District Court's decision to drop parties under Rule 21 for an abuse of discretion."); *see also Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 762 (7th Cir. 2009). The determination of a party's dispensability is also reviewed for abuse of discretion. *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987). Finally, we review the District Court's resolution of the motion to dismiss de novo, *Doe v. Princeton Univ.*, 30 F.4th 335, 341 (3d Cir. 2022), and its factual findings for clear error, *FTC v. AbbVie Inc.*, 976 F.3d 327, 368 (3d Cir. 2020).

## III. THE DISTRICT COURT DID NOT ERR BY DROPPING HUNT AND RETAINING JURISDICTION

When a plaintiff files suit in state court but could have invoked the original jurisdiction of the federal courts, the defendant may remove the action to federal court. 28 U.S.C. § 1441(a). The party seeking removal has the burden of

7

establishing federal jurisdiction and we interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court. *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009). Fox News properly removed this action to the U.S. District Court for the District of Delaware based on diversity jurisdiction.

Just after removal, Avenatti amended his complaint as of right to add Hunt as a defendant, seeming to undo the complete diversity upon which jurisdiction was premised. Had Avenatti sought leave of court for this addition, then 28 U.S.C. § 1447(e) would have governed the situation. Under § 1447(e), "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." As Avenatti points out, because the text of § 1447(e) by its terms applies where a plaintiff "seeks to join" a nondiverse defendant, it is not obvious that it covers party additions effected by way of Rule 15(a)(1)(A) amendments. Those amendments do not normally require any *seeking*; they are simply accomplished. Avenatti thus contends that, without recourse to § 1447(e), the District Court was left with only two options: (1) remand to state court; or (2) inquire whether Hunt could be dropped under the doctrine of fraudulent joinder.

The District Court rejected these proposed alternatives, calling instead on its discretionary authority under Rule 21 to drop Hunt and restore complete diversity. In doing so, the Court invoked the four-factor test of *Hensgens v. Deere & Co.*, 833 F.2d 1179 (5th Cir. 1987), to guide its discretion. Avenatti insists that the Court should have used fraudulent joinder rather

8

than the *Hensgens* factors—and that the Court misapplied the factors in any event.

We think the District Court chose the correct path. Where, as here, a nondiverse defendant has been added post-removal by amendment as of right, courts may sua sponte consider dropping the spoiler under Rule 21. If the new defendant is dispensable and can be dropped without prejudicing any party, then courts may go on to consider the *Hensgens* factors to guide their discretion "on just terms."

### A. Rule 21 gave the District Court discretion to drop Hunt

Remand is not automatic whenever a nondiverse party is present in the case: Rule 21 empowers courts to police the litigation's cast of characters. *See, e.g.*, *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989) ("[I]t is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered."). This authority can be exercised to preserve subject matter jurisdiction. *See, e.g.*, *id.*; *Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 381 n.6 (3d Cir. 2004) ("[I]t is well established that courts . . . have the power under Fed. R. Civ. P. 21 to dismiss dispensable parties to the suit in order to preserve diversity."); *Publicker Indus., Inc. v. Roman Ceramics Corp.,* 603 F.2d 1065, 1069 (3d Cir. 1979) ("The [district] court may dismiss a nondiverse party in order to achieve diversity even after judgment has been entered."); *Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Pub. Corp.*, 635 F.3d 48, 51 (2d Cir. 2011) (explaining that nondiverse, dispensable parties may be dismissed under Rule 21 at any time, so long as doing so does not cause prejudice); *see also* 7 C. Wright, H. Miller, & E.

Copper, Federal Practice and Procedure § 1685 (3d ed. 2016) ("[C]ourts frequently employ [Rule] 21 to preserve diversity jurisdiction over a case by dropping a nondiverse party if the party's presence in the action is not required under [Rule] 19.").

A district court's Rule 21 authority is discretionary but not unlimited. *See DirecTV, Inc.*, 467 F.3d at 845 ("[T]he discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'"). The court cannot drop indispensable parties, *Newman Green, Inc.*, 490 U.S. at 832; Fed. R. Civ. P. 19(b), and it must assure itself that its actions will not prejudice any party, *DirecTV, Inc.*, 467 F.3d at 846. Significantly, because Rule 21 does not contain explicit standards governing the propriety of joinder or severance— that is, what constitutes "just terms"—courts sometimes "must incorporate standards to be found elsewhere" in exercising their Rule 21 discretion. *See, e.g.*, *Pan Am. World Airways, Inc. v. U.S. Dist. Ct. for Cent. Dist. of California*, 523 F.2d 1073, 1079 (9th Cir. 1975); *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010); *see also Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103 (2016) ("[A] motion to a court's discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles.").

Here, the District Court hit all the key notes in the Rule 21 analysis. It confirmed the applicability of the Rule by deciding: (1) Hunt was a dispensable party under Rule 19; and (2) that dropping him would not be prejudicial. For reasons we discuss below, the Court's conclusions on these questions were reasonable.

To further inform its analysis of what constituted "just terms" here, the District Court also considered the *Hensgens* factors. Again, this was appropriate. *See, e.g.*, *Bailey v. Bayer CropScience L.P.*, 563 F.3d 302, 308–09 (8th Cir. 2009) (holding Rule 21 empowered the district court to drop a nondiverse party based on application of the *Hensgens* factors, where party was added after removal); *Schur*, 577 F.3d at 759 (stating that courts should apply the *Hensgens* factors to "determine[e] whether post-removal joinder of a nondiverse party is appropriate"). The factors hardly limited the scope of considerations that the Court could examine. *See Hensgens*, 833 F.2d at 1182 (courts should consider "any other factors bearing on the equities"). Instead, *Hensgens* provided some helpful guideposts that focused the District Court's attention on the most important questions relevant to the issue presented, allowing it to make an informed, rational judgment about whether to retain jurisdiction by dropping Hunt. As § 1447(e) and Rule 21 both give district courts the same broad discretion in making the same underlying decision—whether to retain jurisdiction—we see no reason why courts should be forbidden to consider the same factors in exercising power pursuant to either provision.

One of our sister circuits has considered this issue in a similar situation, and its conclusions accord with our decision. *See Mayes v. Rapoport*, 198 F.3d 457, 462 n.11 (4th Cir. 1999). In *Mayes*, the defendants removed a contract case to federal court based on complete diversity. *Id.* at 459–60. Immediately thereafter, the plaintiff added an additional nondiverse defendant without leave of court via a Rule 15(a) amendment. *Id.* at 462 n.11. The district court nonetheless retained jurisdiction on a fraudulent joinder analysis. *Id.* at 460. On appeal, the Fourth Circuit discussed the complications

11

presented by this posture in a lengthy footnote, observing that Rule 15(a) amendments have the latent potential to force remand without judicial scrutiny. *Id*. at 462 n.11. Ultimately, however, the Circuit found those amendments should be analyzed as though § 1447(e) applied:

> Reading Rule 15(a) in connection with Fed. R. Civ. P. 19 and 21, and 28 U.S.C. § 1447(e), resolves any doubts over whether the district court has authority to pass upon any attempts— even those for which the plaintiff needs no leave of court—to join a nondiverse defendant. . . . [A] district court has the authority to reject a post-removal joinder that implicates 28 U.S.C. § 1447(e), even if the joinder was without leave of court.

*Id*. Significantly, the Fourth Circuit cited *Hensgens* to support its conclusion:

> Since no party raised the fact that [the added defendant] was not diverse, and since *the district court had no prior opportunity to pass upon the propriety of [his] joinder*, the district court properly could have invoked its authority, under § 1447(e) *and related authority*, to determine whether [he] was an appropriate party. *See Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987) (vacating joinder order because district court permitted post-removal joinder of nondiverse party "as a routine matter," without actually exercising discretion over the joinder).

12

*Id*. (emphasis added).  Our discussion above clarifies the relationship—left vague by the Fourth Circuit—between Rule 21, *Hensgens*, and § 1447(e) in these circumstances.

Other Circuits have reached similar results in analogous circumstances.  In *Bailey v. Bayer CropScience L.P.*, for instance, the Eighth Circuit inquired whether a district court could reconsider its earlier decision to permit the addition of two nondiverse parties (by permissive amendment), where the court had previously failed to grasp the jurisdictional consequences.  563 F.3d at 302.  The Circuit found that the district court could do so and had permissibly dropped the spoilers under Rule 21.  *Id*. at 308–09.  The Circuit even approved the district court's use of the *Hensgens* factors to guide its decision.  *Id*. ("[T]he district court accurately considered the relevant [*Hensgens*] factors and held the balancing test weighed against the addition of the nondiverse defendant.").

Likewise, in *Schur v. L.A. Weight Loss Centers, Inc.*, the Seventh Circuit decided that district courts may drop a nondiverse party whose addition (by permissive amendment) was previously approved by a magistrate judge.  577 F.3d at 762.  The Circuit cited *Mayes* and *Bailey* for support and adopted the *Hensgens* factors as the appropriate "framework for determining whether post-removal joinder of a nondiverse party is appropriate." *Id*. at 759.  It emphasized that neither the magistrate judge nor the district court had previously analyzed the propriety of the joinder; yet the latter had to have at least one chance to exercise discretion over whether the spoiler's presence should be permitted to defeat jurisdiction.  *Id*. at 761.

13

*Mayes*, *Bailey*, and *Schur* all support our conclusion that district courts may exercise their discretionary authority to drop nondiverse parties added without leave of court after removal—and that they may consider the *Hensgens* factors when doing so. Litigants may not employ procedural tactics to deny the district court's ability to reject new parties whose presence would defeat diversity. Once jurisdiction has vested in a federal court—which it did here upon removal from state court—careful scrutiny should be applied to any post-removal events threatening to wrench that jurisdiction away. *See, e.g.*, *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1012 n.6 (3d Cir. 1987) (referring to the "long-settled (and salutary) policy that a plaintiff cannot artificially force a retreat to the first (state) forum by embarking purposefully on post-removal steps designed exclusively to foster remand" (citations omitted)).

## B. Avenatti's counterarguments fail to convince

Avenatti nonetheless insists that the District Court erred in several respects.

First, he argues that the District Court could only have dismissed Hunt upon a finding that he had been fraudulently joined. "The doctrine of fraudulent joinder represents an exception to the requirement that removal be predicated solely upon complete diversity." *In re Briscoe*, 448 F.3d 201, 215–16 (3d Cir. 2006). It permits district courts to assume jurisdiction over cases containing nondiverse defendants where it can be shown that they were joined "solely to defeat diversity jurisdiction." *Id*. at 216. The district court may then dismiss the nondiverse parties. *Id*. (citing *Mayes*, 198 F.3d at 461). But this doctrine has a very high bar for showing 'fraud':

14

Joinder is fraudulent where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment. But, if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court.

*Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851–52 (3d Cir. 1992) (punctuation and citations omitted). Avenatti argues that the record does not support such a finding, and thus application of the fraudulent joinder test permits him to join Hunt, forcing remand.

We disagree. Fraudulent joinder doctrine does not apply to party additions that occur *after* a valid removal, as the District Court correctly found. *See, e.g.*, *Steel Valley*, 809 F.2d at 1010 (fraudulent joinder analysis is "focus[ed] on the plaintiff's complaint at the time the petition for removal was filed"); *id*. at 1012 n.6 ("Fraudulent joinder analysis . . . is only appropriate in determining the propriety of removal."); *Mayes*, 198 F.3d at 461 ("Since the fraudulent joinder doctrine justifies a federal court's initial assumption of diversity jurisdiction, it has no effect once the district court actually possesses jurisdiction—including after the case has been removed."). The doctrine thus has no direct application where the nondiverse party was added after the case had already arrived in federal court.

15

Nor do we think that district courts should look to the fraudulent joinder doctrine as the exclusive means to guide their Rule 21 discretion. To be sure, consideration of fraudulent joinder principles might help inform the court's remand decision. *See Mayes*, 198 F.3d at 463 ("[I]f the defendants can carry the heavy burden of proving fraudulent joinder, that fact should be a factor—and perhaps the dispositive factor—that the court considers in deciding whether a plaintiff may join a nondiverse defendant."). After all, it is difficult to imagine why a jurisdiction-defeating defendant should be retained if there is not even a colorable claim against him. Yet we think the fraudulent joinder doctrine is too rigid to serve as the sole lens for analysis—it imposes too high a bar for the district court to meet before it may defend its vested jurisdiction. This is a substantial concern because we must be on guard against forum manipulation in removal cases. *See, e.g.*, *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 n.6 (2007) (removal cases raise unique "forum-manipulation concerns"; in such cases "an amendment eliminating the original basis for federal jurisdiction generally does not defeat jurisdiction"); *Steel Valley Auth.*, 809 F.2d at 1012 n.6; *In Touch Concepts, Inc. v. Cellco P'ship*, 788 F.3d 98, 101 (2d Cir. 2015) ("[F]or the purpose of analyzing statutory subject-matter jurisdiction, the Supreme Court has treated amended complaints in removal cases with flexibility," to ensure federal jurisdiction can be maintained.). District courts should have pragmatic, flexible tools to face down these problems; the *Hensgens* factors fit that need far better than fraudulent joinder does. It would make little sense to grant district courts discretion under Rule 21, only to channel that discretion into a rigid formula.

16

Accordingly, we reject Avenatti's contention that the District Court erred by not conducting a fraudulent joinder analysis.

Next, Avenatti urges that the District Court should not have used Rule 21 to drop Hunt because the Rule permits party severance only late in the litigation—whereas here the case had barely begun—and its use is implicitly constrained by Rule 82. *See* Fed. R. Civ. P. 82 ("These rules do not extend or limit the jurisdiction of the district courts[.]"). These contentions are without merit. There is no time limitation on the use of Rule 21. Fed. R. Civ. P. 21 ("On motion or on its own, the court may *at any time*, on just terms, add or drop a party." (emphasis added)); *Newman-Green, Inc.*, 490 U.S. at 832 ("[I]t is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered."). Nor does Rule 82 militate against using Rule 21 to preserve complete diversity where jurisdiction has already vested; the *Newman-Green, Inc.* Court held that Rule 21 could be so used. Here, the District Court used Rule 21 to protect vested jurisdiction, not to expand it.

Finally, Avenatti contends that a plaintiff is the proverbial 'master' of his complaint, his choice of forum ought to be respected, and the 'spirit' of Rule 15 recognizes this special deference. He insists that district court discretion to reject joinder as of right and retain jurisdiction is inconsistent with these venerable principles. But Avenatti's generalities run up against an insurmountable wall of caselaw already discussed. *See, e.g.*, *Newman-Green, Inc.*, 490 U.S. at 832; *see also Horn v. Lockhart*, 84 U.S. 570, 579 (1873) (recognizing judicial authority to dismiss nondiverse parties and retain

jurisdiction).  Far from granting plaintiffs unlimited rights, the Federal Rules of Civil Procedure and the removal statutes recognize the interests of defendants too.

In sum, we hold that district courts are empowered to police the joinder of parties whose presence would defeat subject matter jurisdiction.  In removal actions predicated on complete diversity, plaintiffs cannot nullify a court's gatekeeping function by adding jurisdictional spoilers as of right under Rule 15(a).  Although § 1447(e) may not directly empower district courts to reject those amendments, Rule 21 gives courts discretion, save what is noted below, to drop parties at any time, including when facing a motion to remand.  A court's Rule 21 discretion is bounded by: (1) Rule 19, such that indispensable parties may not be dropped; and (2) Rule 21's own requirement that no party be prejudiced.  If these prerequisites are satisfied, then district courts may guide their "on just terms" discretion by looking to the factors delineated in *Hensgens*, just as they would in cases where § 1447(e) applied on its face.

## C. The District Court did not abuse its discretion

Avenatti contends that the District Court misapplied the *Hensgens* factors and had no factual basis to support its conclusions. Reviewing the Court's findings for abuse of discretion, *DirecTV, Inc.*, 467 F.3d at 844 n.1, we discern no error.

The District Court began by examining Avenatti's intent in joining Hunt, finding that "Avenatti's evident purpose was to destroy diversity jurisdiction."  *Avenatti*, 2021 WL 2143037, at *3.  This conclusion was amply supported by the record.  Avenatti amended to add Hunt a mere three days after

18

removal—seven days after initial filing and before any discovery had taken place—and he moved to remand just five days later. He sought consensual remand before the motion was even filed. It was reasonable for the District Court to suspect an illicit motive based on this sequence of events. *See Mayes*, 198 F.3d at 463 ("Especially where, as here, a plaintiff seeks to add a nondiverse defendant immediately after removal but before any additional discovery has taken place, district courts should be wary that the amendment sought is for the specific purpose of avoiding federal jurisdiction."). The minor substantive differences between the two complaints could only have bolstered this suspicion: beyond labeling Hunt as a defendant, the amended complaint added just one allegation, that Hunt and Fox News had published an article containing defamatory statements. *Avenatti*, 2021 WL 2143037, at *3. But Avenatti had already accused Fox News and its other hosts of repeating *substantively identical statements* elsewhere. *Id*. Finally, the fact that Avenatti discussed Hunt in the initial complaint without naming him as a defendant also supported a finding of improper purpose.[3]

The District Court thus had good reason to conclude that Hunt was added to force remand, a fact the Court rightly weighed in favor of dropping him. It did not abuse its discretion by disbelieving Avenatti's claim that Hunt was added because counsel just happened to discover the relevant article immediately following removal.

---

[3] At Oral Argument, Avenatti's counsel was unable to adequately explain why Hunt was not named before the case was removed.

19

Next, the District Court considered whether dropping Hunt would prejudice Avenatti. It found no prejudice would flow because Hunt was a dispensable party. Again, this conclusion was reasonable. Hunt was charged with making just two defamatory statements, which the amended complaint attributed equally to his employer, Fox News. Because Fox News was already in the case and could provide complete recovery under joint-and-several liability, there was no need to retain Hunt. *See* Appellant's Br. 33 (asserting joint-and-several liability will apply); *Newman-Green*, 490 U.S. at 838 (holding that, where multiple defendants "are jointly and severally liable, it cannot be argued that [one is] indispensable"); *Bailey*, 563 F.3d at 309. Moreover, nothing was alleged about Hunt's role or relationship to Fox News that would make recovery against him alone plausible.

As the District Court observed, its findings here ensured that dropping Hunt would not run afoul of Rule 19. Although Rule 21 severance must avoid prejudicing parties *beyond the plaintiff*, there has been no claim here that anyone *besides Avenatti* was prejudiced by Hunt's removal. Nor does such a person appear to us. Accordingly, the District Court did not err by restricting its focus to potential prejudice to Avenatti, although clarity would have been better served by conducting the Rule 19 analysis before moving on to the *Hensgens* factors.

Lastly, the District Court found the absence of delay in amending weighed in favor of retaining Hunt, but that this fact did not overcome the "conclusion that [Avenatti] added Hunt to defeat diversity jurisdiction and will not suffer" should he be dropped. *Avenatti*, 2021 WL 2143037, at *3. The Court accordingly proceeded to dismiss Hunt under Rule 21 and,

20

with complete diversity restored, deny Avenatti's motion to remand.[4]

Far from an abuse of discretion, the District Court's *Hensgens* analysis was persuasive and well-supported. The Court had solid grounds to thwart the transparent threat to its jurisdiction that Hunt's addition represented.

\* \* \* \* \*

In sum, the District Court did not abuse its discretion in its jurisdictional analysis. As Avenatti raised no challenge to the Court's disposition apart from the jurisdictional objection, this conclusion resolves the case. Thus, we will affirm the District Court's orders.

---

[4] Although the District Court did not identify any "other factors bearing on the equities," *Hensgens*, 833 F.2d at 1182, the Court's analysis was nonetheless sound. Avenatti argues that the "equities weigh decidedly against the Defendants," because removal here represented "blatant forum shopping . . . based on a technicality," while his initial choice of forum should have received more respect. Appellant's Br. at 42–43. Coming from Avenatti, the accusation of exploiting technicalities to obtain one's preferred forum rings hollow. In any event, there is nothing inequitable about asserting one's legal rights, *see, e.g.*, *Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 589 (7th Cir. 1989) (Posner, J.), as Fox News did, and Defendants' interest in maintaining the federal forum was no less significant than Avenatti's desire to depart, *see, e.g.*, *Hensgens*, 833 F.2d at 1182. Accordingly, the District Court did not abuse its discretion by omitting these considerations.